STATE OF NORTH CAROLINA )   IN THE GENERAL COURT OF JUSTICE
COUNTY OF GUILFORD                    SUPERIOR COURT DIVISION
                                      17 CVS 4679

FILED
2017 APR 13 A 11: 10
GUILFORD CO., C.S.C
BY _____

```
                                )
NILE HOLDINGS LLC               )
                                )
        Plaintiff,              )
                                )
    v.                          )
                                )       COMPLAINT
TRAVELERS CASUALTY INSURANCE    )
COMPANY OF AMERICA;             )
THE TRAVELERS COMPANIES, INC.;  )
and MATTHEW P. INGHAM,          )
                                )
        Defendants.             )
                                )
```

**NOW COMES** the Plaintiff, Nile Holdings LLC ("Plaintiff"), by and through counsel, complaining of Defendant, Travelers Casualty Insurance Company of America, Defendant Travelers Companies, Inc., and Defendant Matthew Ingham (collectively, "Defendants"), and alleges and says as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Nile Holdings LLC is a limited liability company organized and existing by virtue of the laws of the State of North Carolina, with its principal place of business in Guilford County, North Carolina.

2. Upon information and belief, Defendant Travelers Casualty Insurance Company of America (hereinafter referred to as "Defendant Travelers Casualty") is a corporation duly organized and existing under the laws of the State of Connecticut and with a principal place of business in Hartford, Connecticut, and Defendant Travelers Casualty is a duly licensed and authorized insurance company, engaged in the transaction of insurance business in the State of North Carolina.

3. Upon information and belief, Defendant The Travelers Companies, Inc. (hereinafter referred to as "Defendant Travelers") is a corporation duly organized and existing under the laws of the State of Minnesota.

4. Upon information and belief, Defendant Matthew P. Ingham (hereinafter referred to as "Defendant Ingham") is a citizen and resident of Union County, North Carolina, and is not a minor or an incompetent person, nor in active military service.

5. At the time of the occurrence of the damages herein alleged, Plaintiff was (and to this day remains) the owner of a commercial building located at 1950 Bishop Madison Lane in Charlotte, Mecklenburg County, North Carolina (the "Property"), which Property was insured under a policy of insurance providing "Businessowners Property Coverage" to Plaintiff and issued by Travelers Casualty Insurance Company of America, Policy No. 680-3C076059-13-42 (hereinafter referred to as the "Policy"). The terms of the Policy, including all endorsements thereto, are incorporated by reference as though fully set forth herein.

6. At the time the damages to the Property occurred as herein alleged, Plaintiff was a policyholder and a named insured under the Policy.

7. At the time the damages to the Property occurred as herein alleged, the Property was "Covered Property" as defined under the Policy, and said Property was insured for the nature of the damages to the Property herein alleged, and provided coverage with a limit of liability in the amount of $910,311.00.

8. At all times relevant hereto, the Policy stated that Defendant Travelers Casualty will pay for direct physical loss of or damage to Plaintiff's Covered Property resulting from a "Covered Cause of Loss" as defined in the Policy.

9. The damage to the Property described herein (caused by the theft and attempted theft of building components from the Property) was the result of a "Covered Cause of Loss" as defined in the Policy.

10. At all times relevant hereto, the Policy stated that Defendant Travelers Casualty's limit of liability will be $910,311.00 per occurrence.

11. Upon information and belief, at all times relevant hereto, Defendant Ingham was an agent and employee of Defendant Travelers Casualty, and acting within the course and scope of his employment with Defendant Travelers Casualty.

12. The actions of the Defendant Ingham of Defendant Travelers Casualty, as further alleged herein, are imputed to Defendant Travelers Casualty under the doctrine of *Respondeat Superior*.

13. This Court has proper subject matter and personal jurisdiction, and Plaintiff has met all conditions precedent to maintaining this civil action.

## FACTUAL ALLEGATIONS

14. The allegations set forth in the preceding numbered paragraphs are incorporated herein by reference as fully as if set forth word for word.

### *The April, 2014 Occurrence*

15. On or about April 14, 2014, thieves detached roof-mounted HVAC units (the "HVAC Units") from the Property's roof and stole the HVAC Units, and Plaintiff thereafter reported promptly to Defendant Travelers Casualty that the Property had been damaged on this date. Travelers responded by opening claim number E2G8833 (hereinafter referred to as the "April, 2014 Claim").

16. Following Plaintiff's reporting of the April, 2014 Claim to Defendant Traveler's Casualty, Defendant Travelers Casualty assigned Defendant Ingham to evaluate the April, 2014 Claim, and, upon information and belief, Defendant Ingham had primary responsibility for Defendant Travelers Casualty's evaluation of the April, 2014 claim.

17. Defendant Ingham evaluated the April, 2014 Claim, and based upon his evaluation, Defendant Travelers Casualty determined that the claim's scope was related exclusively to the theft of the HVAC Units from the Property.

18. Travelers Casualty had not completed its evaluation and processing of the April, 2014 Claim as of August 21, 2014, at which time the Property suffered further damage in connection with a distinct theft occurrence, as described below, leading to the initiation of a separate claim at that time.

19. Upon information and belief, Ingham and/or other representatives of Defendant Travelers Casualty and/or Defendant Travelers were furnished by Plaintiff with access to the Property, and entered the Property to inspect and photograph it on or about September 14, 2014.

20. As of the Property's initial inspection by representatives of Defendant Travelers Casualty and/or Defendant Travelers, damage to the Property beyond the absence of the stolen HVAC Units was, upon information and belief, open and obvious, including for example damage to the coping around the edge of the roof (likely resulting from the thieves' pushing of the HVAC units over the edge of the roof to drop them to the ground below), but the representatives of Defendant Travelers Casualty and/or Defendant Travelers did not undertake to assess whether

the roof had been damaged by the thieves when they removed the HVAC Units from the roof, or whether the Property had been otherwise damaged in connection with the activities of the thieves who stole the HVAC Units on April 14, 2014.

21. The thieves who stole the HVAC Units damaged the Property's membrane roof by dragging and/or rolling the HVAC Units across the roof to the edge of the roof at the time the HVAC Units were stolen in April of 2014, causing perforations in the roof's membrane that resulted, over time, in the intrusion of water into the Property through penetrations in the roof. The potential for this sort of damage to have occurred to the roof in connection with the theft of the HVAC Units was not evaluated by Defendant Travelers Casualty and/or Defendant Travelers.

22. On or about March 3, 2015, Defendant Travelers Casualty obtained an estimate from HVAC Investigators, a third-party damage consulting service, which determined a cost of $70,525.72 to replace the HVAC Units, but provided no other evaluative input with respect to the Property. The March 3, 2015 report prepared by HVAC Investigators is incorporated herein by reference as if set forth in full.

23. Defendant Ingham, upon receipt of the report prepared by HVAC Investigators, assigned a depreciation rate of approximately 50% to the amount of the estimated replacement cost to arrive at $34,229.00 as the value of the HVAC units as of April 14, 2014, and Defendant Travelers Casualty thereafter paid Plaintiff that amount by check dated March 6, 2015.

24. At no point did Defendant Travelers Casualty or Defendant Ingham direct Plaintiff to any firm qualified to design, install, maintain, replace, and/or repair HVAC systems in commercial buildings that would actually perform the work to repair the damage corresponding to the April, 2014 Claim for $34,229.00. (The HVAC Investigators firm used by Defendant Travelers Casualty and Defendant Ingham to evaluate the April, 2014 Claim is only a consulting firm and not able to actually perform any work at the prices they quote.)

25. As of the date of the filing of this Complaint, and despite efforts over the past two years, Plaintiff remains unable to find a firm to repair the damage corresponding to the April, 2014 Claim for the amount paid to Plaintiff by Defendant Travelers Casualty in connection with the April, 2014 Claim.

### *The August, 2014 Occurrence*

26. On or about August 21, 2014, thieves broke into the Property's interior and stripped and stole electrical wiring (and other items) from the Property, and Plaintiff reported to Defendant Travelers Casualty that the Property had been damaged on this date. Travelers responded by opening claim number EYP8404 (hereinafter referred to as the "August, 2014 Claim"). (The April, 2014 Claim and the August, 2014 Claim are collectively referred to as the "Policy Claims").

27. In the course of stripping the wiring and tearing out the metal conduit the wiring was routed through within the Property, the thieves heavily damaged the drop ceilings, interior walls, and flooring, as well as furniture and fixtures in the Property.

28. In addition to stealing the wiring, the thieves stole elements of the Property's plumbing lines, resulting in heavy damage to the bathrooms and the walls around the plumbing lines. The thieves also removed additional metal building components from the Property, including elements of interior walls, partitions, and or doors.

29. Following Plaintiff's initiation of the August, 2014 Claim with Defendant Travelers Casualty, Defendant Travelers Casualty assigned Defendant Ingham to evaluate the August, 2014 Claim, concurrently with his evaluation of the April, 2014 Claim, which was still ongoing. Upon information and belief, Defendant Travelers also participated in the investigation and evaluation of the Policy Claims, and Defendant Ingham had primary responsibility for Defendant Travelers Casualty's evaluation of the August, 2014 claim. A representative of Defendant Travelers conducted an examination under oath of Plaintiff's owner and Manager on or about October 14, 2014, and thereafter communicated with Plaintiff on October 24, 2014 about damage reportedly observed by a third party to the Property's front doors. Plaintiff requested a copy of the audio from the examination under oath and Defendant Ingham indicated it would be provided to Plaintiff, but Plaintiff was never provided with a copy of it.

30. As of November 21, 2014, Defendant Ingham communicated to Plaintiff that the covered damage to the Property, as defined by Travelers Casualty, could encompass the "three different losses" to the Property he had identified: theft of the HVAC Units, damage relating to the theft and attempted theft of electrical wiring from the Property, and damage to the Property's front doors. (Plaintiff declined to pursue any claims as to the damage to the front doors given the

relatively minimal cost to address that damage and Plaintiff's preference to focus on the far more substantial damage relating to HVAC and electrical systems.)

31. Plaintiff timely reported and filed the Policy Claims with Defendant Travelers Casualty under the coverages provided in the Policy, and cooperated with Defendant Travelers Casualty and Defendant Travelers, including the prompt provision by Plaintiff to Defendants of: an examination under oath by Plaintiff's owner and Manager on or about October 14, 2014; contact information for persons who helped Plaintiff manage the Property; information about Plaintiff's business; a lease Plaintiff entered into for the Property; construction plans for the renovation of a portion of the Property; identification of and access to Plaintiff's general contractor for the renovation of a portion of the Property; contracts and payments between Plaintiff and its general contractor.

32. On December 5, 2014, Defendant Travelers sent a reservation of rights letter to Plaintiff with respect to the April 14, 2014 Claim indicating that Defendant Travelers Casualty had been "unable to determine whether your claim is covered under your policy based on the information available to us at this time."

33. On or about January 27, 2015, Defendant Ingham inspected the Property after Plaintiff furnished Defendant Travelers Casualty on December 22, 2015 with detailed construction drawings prepared by Plaintiff's general contractor for a renovation of part of the Property that had been planned and partially paid for as of the April 14, 2014 theft of the HVAC Units and that was underway as of the August 21, 2014 break-in and damage to the Property. Plaintiff coordinated with its general contractor for the renovation work to provide access to the Property to Defendant Ingham on January 27, 2015.

34. On or about March 3, 2015, Defendant Ingham completed his evaluation of the August, 2014 Claim, and based upon his evaluation, Defendant Travelers Casualty determined and defined the scope of the August, 2014 Claim to encompass only damage from the theft of electrical wiring from the Property. Defendant Travelers Casualty failed to identify other damage to the Property resulting from the break-in and thefts that occurred on August 21, 2014, including damage relating to the theft of components of the Property's plumbing and other systems and components, and water damage associated with the thefts from the Property.

35. Defendant Travelers Casualty obtained an estimate from Triton Electrical in the amount of $79,660.00 for damage relating to theft of electrical wiring from the Property, and

6

Defendant Ingham, upon receipt of the estimate, caused Defendant Travelers Casualty to issue Plaintiff a check dated March 6, 2015 in the amount of $68,304.20, which amount represents ten percent depreciation and Plaintiff's $1,000.00 deductible.

36. The Property had been leased by Plaintiff to Dudley Beauty School Systems, and Plaintiff was renovating a portion of the Property to lease it to Adora LLC for use as salon suites. The damage to the Property and Defendants' conduct as described herein relating to the Policy has caused Plaintiff to lose lease revenue relating to the Property.

### *Readjustment as to Membrane Roof Damage*

37. Due to the continued presence of water within the Property and damage to the roof, and at Plaintiff's insistence, Defendant Travelers Casualty engaged Trinity Engineering in 2016 to inspect and evaluate the Property's roof for damage relating to theft of the HVAC Units.

38. Upon its investigation Trinity Engineering concluded in a report sealed by a professional engineer on August 9, 2016 that the roof membrane was damaged during the April 14, 2014 theft of the HVAC Units, and on October 12, 2016, Defendant Travelers Casualty issued Plaintiff a check in the amount of $31,541.59, representing payment to Plaintiff for damage to the roof membrane only, without compensating Plaintiff for damage to any other roof component or any other item of damage resulting to the Property from the theft of the HVAC Units (hereinafter referred to as the "Readjustment").

### *Claim Investigation Deficiencies*

39. At no point during their evaluation of the Policy Claims or during the Readjustment did any of the Defendants identify, account for, investigate, or offer compensation to Plaintiff pursuant to the Policy for substantial damage to the Property beyond the HVAC Units, electrical wiring, and front doors, including without limitation the following items of damage and/or deficiencies:

    a. Damage to the ceiling grid underneath the HVAC units;

    b. Damage to ductwork related to theft of the HVAC units;

    c. Damage to flooring related to falling materials associated with the theft of the HVAC units;

    d. Damage to interior finishes due to theft of HVAC units, electrical wiring, plumbing lines, and water intrusion;

    e. No allowance made for removal and replacement of roof's gravel ballast;

f. No allowance made for removal and replacement of saturated insulation board on the roof resulting from perforation of the membrane roof;

g. No allowance made for removal and replacement of other items typical to membrane replacement on a rubber roof;

h. No allowance made for line sets needed for roof-mounted HVAC units;

i. No delineation between labor and materials for the depreciation assigned to the various components of the losses;

j. Overstating depreciation factors resulting in underpayment of the claim;

k. Failure to assess the scope and causes of water intrusion;

l. Failure to evaluate open and obvious theft-related damage to and removal of plumbing lines;

m. No allowance made for the replacement of plumbing lines and repair of related damage; and

n. Such other items as may be shown in discovery and proven at trial (items "a" through "m" above, collectively, are hereinafter referred to as the "Response Deficiencies").

## FIRST CLAIM FOR RELIEF:
## NEGLIGENCE AGAINST DEFENDANT INGHAM

40. The allegations set forth in the preceding numbered paragraphs are incorporated herein by reference as fully as if set forth word for word.

41. Defendant Ingham owed Plaintiff the duty to exercise reasonable care in his evaluation of the Policy Claims, including his assessment of damage to the Property.

42. Defendant Ingham breached this duty in that he failed to identify damage to the Property associated with the activity of thieves attacking the Property in April and August of 2014 beyond theft of the HVAC units, damage to the electrical system, and damage to the front doors, including without limitation the following:

a. Failed to identify damage to the ceiling grid underneath the HVAC units;

b. Failed to identify damage to ductwork related to theft of the HVAC units;

c. Failed to identify damage to flooring related to falling materials associated with the theft of the HVAC units;

8

d.  Failed to identify damage to interior finishes due to theft of HVAC units, electrical wiring, plumbing lines, and water intrusion;

e.  Failed to make allowances for removal and replacement of gravel ballast on the roof;

f.  Failed to make allowances for removal and replacement of saturated insulation board on the roof;

g.  Failed to make allowances for removal and replacement of other items typical to membrane replacement on a rubber roof;

h.  Failed to make allowances for line sets needed to HVAC units;

i.  Failed to delineate between labor and materials for the depreciation assigned to the various components of the Policy Claims;

j.  Overstated depreciation factors resulting in underpayment of the Policy Claims;

k.  Failed to assess the scope and cause of water intrusion in the Property; and

l.  Failed to identify and investigate damage to and theft of plumbing lines; and

m.  Failed to make allowances for the replacement of damaged and removed plumbing lines; and other items as may be shown in discovery and proven at trial.

43. As a direct and foreseeable proximate result of Defendant Ingham's negligence, Plaintiff has suffered damage to the Property, as well as a diminution in value of the Property, and other damages to be proven at trial, in an amount in excess of $25,000.00, and the negligence of Defendant Ingham is imputed to Defendant Travelers Casualty under the doctrine of *Respondeat Superior* to the extent Defendant Ingham was acting within the course and scope of his responsibilities as an employee of Defendant Travelers Casualty.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT AGAINST DEFENDANT TRAVELERS CASUALTY

44. The allegations set forth in the preceding numbered paragraphs are incorporated herein by reference as fully as if set forth word for word.

45. On or about October 25, 2013, Defendant Travelers Casualty issued the Policy to Plaintiff which provided coverage on the Property for the period extending from October 6, 2013 to October 6, 2014.

46. Plaintiff fully paid the premium for the Policy, and Defendant Travelers Casualty accepted the premium.

47. At all times from October 6, 2013 up through and including October 6, 2014, Plaintiff and Defendant Travelers Casualty had a valid and binding contract via the Policy for the provision of insurance to Plaintiff for the Property.

48. On the date of the Policy Claims above, Plaintiff was an insured under the Policy and the Property was a covered property under the Policy, and Plaintiff's Property was thereby insured by Defendant Travelers Casualty for the damages described herein.

49. Since the filing of the Policy Claims with Defendant Travelers Casualty, Plaintiff has requested on several occasions that Defendant Travelers Casualty fully satisfy Plaintiff's claims for damages payable under the Policy relating to the occurrences of damage to the Property corresponding to the Policy Claims.

50. Defendant Travelers Casualty has failed to properly reimburse Plaintiff for the damages Plaintiff is entitled to receive under the Policy.

51. Defendant Travelers Casualty's failure to fully and completely pay Plaintiff for the amount reasonably necessary to repair the damage to the Property and otherwise compensate Plaintiff for Plaintiff's losses covered by the Policy is a material breach of Plaintiff's contract with Defendant Travelers Casualty, and Plaintiff has suffered damages as a result thereof.

52. Plaintiff has performed all of its contractual obligations under the Policy and is entitled to full performance by Defendant Travelers Casualty of Defendant Travelers Casualty's contractual obligations and duties.

53. As a direct and proximate result of the breach of contract by Defendant Travelers Casualty, Plaintiff is entitled to recover compensatory damages from Defendant Travelers Casualty in an amount in excess of $25,000.00.

### THIRD CLAIM FOR RELIEF:
### UNFAIR AND DECEPTIVE TRADE PRACTICES
### AGAINST DEFENDANTS TRAVELERS CASUALTY AND TRAVELERS

54. The allegations set forth in the preceding numbered paragraphs are incorporated herein by reference as fully as if set forth word for word.

55. At all times relevant hereto, Defendant Travelers Casualty was an insurance company that engaged in the transaction of insurance business in the State of North Carolina.

56. At all times relevant hereto, Defendant Travelers assisted Defendant Travelers Casualty in the transaction of insurance business in the State of North Carolina, including with respect to handling the Policy Claims.

57. At all times relevant hereto, Defendant Travelers Casualty was engaged in the operation and conduct of business activity which concerned or affected commerce.

58. At all times relevant hereto, Defendant Travelers was engaged in the operation and conduct of business activity concerning and/or affecting commerce.

59. The acts and practices of Defendant Travelers Casualty and Defendant Travelers in their dealings with the Plaintiff, as alleged above, constitute unfair and deceptive trade practices, in one or more of the following ways:

> a. By grossly limiting the scope of their evaluative duties with respect to assessing the full extent of damage to the Property and to Plaintiff upon Plaintiff's reporting of the Policy Claims;
>
> b. By issuing misleading and undervalued depreciation amounts in calculating damages to the Property;
>
> c. By causing to be issued misleading reports in order to pressure, coerce, and deceive the Plaintiff into foregoing necessary repairs to the Property which further damaged the Property;
>
> d. By compelling the Plaintiff to institute litigation to recover amounts due to it under the Policy by offering substantially less than the amounts which will be ultimately recovered in this civil action;
>
> e. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy;
>
> f. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy;
>
> g. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements were completed;
>
> h. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

11

  i. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled; and

  j. By engaging in such other unfair and deceptive trade practices as may be shown in discovery and proven at trial.

  60. As a direct and proximate result of the unfair and deceptive acts and practices of Defendant Travelers Casualty, the Plaintiff is entitled to recover compensatory damages from Defendant Travelers Casualty in an amount in excess of $25,000.00, to be trebled as allowed under N.C.G.S. § 75-16.

  61. As a direct and proximate result of the unfair and deceptive acts and practices of Defendant Travelers, the Plaintiff is entitled to recover compensatory damages from Defendant Travelers in an amount in excess of $25,000.00, to be trebled as allowed under N.C.G.S. 75-16.

  62. Defendant Travelers Casualty has refused, in an unjust and unwarranted manner, to resolve this matter, and therefore, Plaintiff is entitled to recover reasonable attorneys' fee from Defendant Travelers Casualty under N.C.G.S. 75-16.1.

### FOURTH CLAIM FOR RELIEF:
### BAD FAITH INSURANCE PRACTICES
### AS TO DEFENDANT TRAVELERS CASUALTY

  63. The allegations set forth in the preceding numbered paragraphs are incorporated herein by reference as fully as if set forth word for word.

  64. At all times alleged above, Defendant Travelers Casualty was Plaintiff's insurer and had a contractual obligation to the Plaintiff under the subject insurance policy.

  65. Defendant Travelers Casualty acted in bad faith by refusing to settle or negotiate Plaintiffs claims for property damage, despite Plaintiff's reasonable efforts over almost three years to cooperate in any manner requested by Defendant Travelers and/or Defendant Travelers Casualty.

  66. Defendant Travelers Casualty refused to settle or negotiate Plaintiff's claims for property damage in conscious and intentional disregard of, and indifference to the rights of Plaintiff under the Policy. There was and is no reasonable basis for the refusal of Defendant Travelers Casualty to evaluate and resolve Plaintiff's claims for the full scope of damage the Property sustained, and such recalcitrance of Defendant Travelers Casualty in failing to effectuate prompt, fair, and equitable settlement of Plaintiff's claims as to which coverage and

liability is reasonably clear is not in good faith. The conduct of Defendant Travelers Casualty as described herein constitutes violations of the Unfair Claim Settlement Practices Act, N.C.G.S. § 58-63-15(11).

67. Defendant Travelers Casualty conduct towards the Plaintiff constituted outrageous, willful and wanton conduct, and was a misuse of its power and authority as an insurance company.

68. As a direct and proximate result of Defendant Travelers Casualty's bad faith refusal to settle or negotiate Plaintiff's Policy Claims under the Policy, the Plaintiff is entitled to recover compensatory damages from Defendant Travelers Casualty in an amount in excess of $25,000.00.

69. The malicious, willful and wanton acts of Defendant Travelers Casualty, as set forth above, were undertaken and condoned by Defendant Travelers Casualty's claim manager(s).

70. As a result of the malicious, willful and wanton conduct of Defendant Travelers Casualty and Defendant Travelers Casualty's claim manager, the Plaintiff is entitled to punitive damages from Defendant Travelers Casualty in an amount in excess of $25,000.00.

### PRAYER FOR RELIEF:

WHEREFORE Plaintiff Nile Holdings, LLC prays the Court that it have and recover the following relief from Defendant Travelers Casualty, Defendant Travelers, and Defendant Ingham:

1. Compensatory damages in an amount in excess of $25,000.00;
2. Treble damages under N.C.G.S. 75-16;
3. A reasonable attorneys' fee under N.C.G.S. 75-16.1;
4. Punitive damages in an amount in excess of $25,000.00
5. The costs of this civil action;
6. Pre-judgment and post-judgment interest as allowed by law;
7. That all issues so triable be tried by a jury; and
8. For such other and further relief as the Court may deem just and proper.

This the 13th day of April, 2017

*[signature]*
D. Marsh Prause
N.C. State Bar No. 20085
George D. Humphrey, III
N.C. State Bar No. 24313
*Attorneys for Nile Holdings LLC*

***ALLMAN SPRY DAVIS LEGGETT & CRUMPLER, P.A.***
380 Knollwood Street, Suite 700
Post Office Drawer 5129
Winston-Salem, NC 27113-5129
Telephone:   336-722-2300
Website:     www.allmanspry.com

14